24CA0485 Peo v Urzua-Hernandez 08-06-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0485
Weld County District Court No. 13CR1649
Honorable Timothy G. Kerns, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Johan Joshua Urzua-Hernandez,

Defendant-Appellant.

---

ORDER VACATED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE PAWAR
Sullivan and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 6, 2026

---

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Tracy C. Renner, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Johan Joshua Urzua-Hernandez, appeals the district court's order denying his Crim. P. 35(a) motion to correct an illegal sentence. We agree with Urzua-Hernandez that the district court erred by denying, as untimely, his Crim. P. 35(a) motion concerning the validity of the court's post-sentencing restitution order. In accordance with *Snow v. People*, 2025 CO 32, we vacate the restitution order and remand the case for entry of an order under section 18-1.3-603(1)(d), C.R.S. 2025, that no restitution is owed.

## I.    Background

¶ 2    Urzua-Hernandez was charged with first degree assault based on allegations that he punched his father's landlord and hit him with a hammer. As part of a plea agreement, Urzua-Hernandez pleaded guilty to an added count of attempted second degree murder with a stipulated twenty-year prison sentence. As a term of his plea agreement, Urzua-Hernandez agreed that "[r]estitution and costs of prosecution as to all originally filed and pled counts will be as ordered by the Court."

¶ 3    At the providency hearing, the district court reiterated the terms of Urzua-Hernandez's plea, including that he "would also be

1

responsible to pay any restitution as ordered by the [c]ourt." The court addressed the prosecution regarding restitution: "And if you can — I realize that restitution is probably not going to be paid anytime soon, but if you can at least try to investigate that restitution?" The prosecutor confirmed he would. Otherwise, restitution was not discussed.

¶ 4 At the sentencing hearing, the prosecutor did not request or otherwise address restitution. After imposing the stipulated sentence, the district court granted the prosecution "91 days to file a notice of restitution." The court explained to Urzua-Hernandez,

> What that means is that the Prosecutor's simply going to potentially request that you pay any out-of-pocket expenses to the victims in this — these cases. Your lawyers will have 30 days to file an objection. If I don't see an objection timely filed within 30 days, I will be ordering as a condition of your sentence and ultimate parole that you pay restitution as ordered by the Court.

¶ 5 The prosecution filed a request for restitution fifty-nine days after the sentencing hearing. The request sought $5,435.43 in restitution and sought to reserve additional costs of future treatment under section 18-1.3-603(1)(c). Ninety days after the sentencing hearing, the district court signed the restitution order

2

without objection. The court also granted, without objection, two subsequent requests for restitution. The final restitution order totaled $7,110.37.

¶ 6 Nine years later, Urzua-Hernandez filed a postconviction motion to correct an illegal sentence under Crim. P. 35(a). He argued that his sentence was illegal under *People v. Weeks*, 2021 CO 75, because the district court did not issue an order at sentencing under section 18-1.3-603(1) that he was liable for restitution. Instead, he asserted, the court only granted the prosecution ninety-one days to "potentially" request that he pay restitution.

¶ 7 The district court denied Urzua-Hernandez's motion as untimely. Relying on *People v. Tennyson*, 2023 COA 2, the court concluded that "the purported error was a sentence imposed in an illegal manner and not an illegal sentence itself." The court added that it "may reconsider after clarification from the Supreme Court, who has taken Cert. to that issue."

¶ 8 This appeal followed.

## II.    Discussion

¶ 9    Urzua-Hernandez contends that the district court erred by denying his Crim. P. 35(a) motion as untimely.  He argues that the court failed to enter one of the orders required by section 18-1.3-603(1) at sentencing, resulting in an illegal sentence that must be corrected by entry of a subsection (1)(d) order that no restitution is owed.  We agree.

### A.    Standard of Review

¶ 10    The denial of a Crim. P. 35(a) motion presents a question of law subject to de novo review.  *Snow*, ¶ 19.  Likewise, we review de novo the legality of a sentence.  *Id.*

### B.    Illegal Sentence

¶ 11    Every judgment of conviction must contain one of four orders regarding restitution: (1) an order setting a specific amount of restitution; (2) an order requiring restitution but reserving determination of the amount; (3) an order requiring the defendant to pay restitution covering the actual costs of specific future treatment of a victim; or (4) an order that no restitution is required.  § 18-1.3-603(1)(a)-(d); *Snow*, ¶ 20; *Weeks*, ¶ 3.  A sentence that does not include one or more of these four enumerated restitution

4

orders is an illegal sentence. *Snow*, ¶ 21. And the district court may not correct such an illegality by entering a subsection (1) order sometime after sentencing. *See id.* at ¶¶ 30-32. Rather, "the sole remedy consistent with the legislative intent behind subsection (1) is vacatur of the untimely restitution order and entry of an order pursuant to subsection (1)(d) that there is no restitution owed." *Id.* at ¶ 38.

¶ 12 In *Snow*, our supreme court concluded that the district court entered an illegal sentence when, at sentencing, it "reserve[d] restitution for [sixty] days." *Id.* at ¶¶ 7, 23. At the sentencing hearing, the prosecution did not "request restitution or give any indication that it intended to seek restitution"; it asked only that the court "reserve restitution at this point in time" — a request the district court granted. *Id.* at ¶ 7. The supreme court held that such an order — which it characterized as "the mere reservation of the issue of restitution in its entirety" — violated section 18-1.3-603(1), making the sentence illegal. *Snow*, ¶ 22.

¶ 13 At Urzua-Hernandez's sentencing hearing, "the prosecution did not request restitution or give any indication that it intended to seek restitution." *Id.* at ¶ 7. It did not even ask to "reserve

5

restitution" like the prosecution did in *Snow*. *Id.* The district court's only restitution-related order at sentencing was to allow the prosecution ninety-one days "to file a notice of restitution." The court explained this meant that the prosecution would "*potentially* request" that Urzua-Hernandez pay restitution. (Emphasis added.) The court added that Urzua-Hernandez's attorneys would have thirty days to file an objection to any request, but, if a timely objection was not filed, the court would order Urzua-Hernandez to "pay restitution as ordered by the Court" as a condition of his sentence.

¶ 14    The district court's course of conduct at sentencing did not (1) order Urzua-Hernandez to pay a specific amount of restitution, *see* § 18-1.3-603(1)(a); (2) order that Urzua-Hernandez was liable for restitution but reserve determining the amount for a later date, *see* § 18-1.3-603(1)(b); (3) order Urzua-Hernandez to pay the actual cost of specific future treatment for the victim, *see* § 18-1.3-603(1)(c); or (4) order no restitution, *see* § 18-1.3-603(1)(d). Thus, "because the district court failed to enter at least one of the four restitution orders authorized by subsection (1), [Urzua-Hernandez] received an illegal sentence." *Snow*, ¶ 23.

6

¶ 15    The Attorney General attempts to distinguish this case from

*Snow*, arguing that this case is more like *Weeks*, *Tennyson*, and

*Johnson v. People*, 2025 CO 29.

¶ 16    In *Weeks*, the prosecutor asked at the sentencing hearing

"that the issue of restitution 'remain open,'" and the district court

ordered, "I will leave restitution open for ninety-one days." *Weeks*,

¶ 11.  The court set a briefing schedule and explained, "If no

request is made, I'll rule on the pleadings." *Id.*  While the question

of whether the court in *Weeks* entered a valid subsection (1) order

was not before the supreme court in that case, *see Snow*, ¶ 28 n.9,

the supreme court in *Snow* determined that the record of the

proceedings in *Weeks* "reflected that the trial court had invoked

subsection (1)(b)." *Snow*, ¶ 28.  *Snow* was careful to point out

certain facts supporting an implicit finding of restitution liability in

*Weeks*, namely that:

- "at sentencing, the prosecution . . . advised that it had
  already decided it would be requesting restitution and
  that it intended to identify the proposed amount of
  restitution after sentencing," *Snow*, ¶ 28 (citing *Weeks*,
  ¶ 11);

- before the hearing, "the trial court had previously granted the prosecution's request for an amount of restitution in the codefendant's case based on the *same pecuniary losses suffered by the same victim in the same incident*," *id.* (citing *Weeks*, ¶ 11 n.6); and

- "following the sentencing hearing, the court confirmed that, at sentencing, it had entered an order allowing the prosecution ninety-one days to submit the restitution information," *id.* (citing *Weeks*, ¶ 16).

The record before us does not contain similar facts which would support an implicit finding of restitution liability.

¶ 17     In *Tennyson*, the defendant stipulated in the plea agreement "that there was restitution and he was liable for it." *Tennyson*, ¶ 9. And the prosecution agreed to provide information establishing the amount of restitution within ninety days of sentencing. *Id.* But unlike *Tennyson*, Urzua-Hernandez did not stipulate "that there was restitution and that he was liable for it." *Id.* Nor did the prosecution make any representation that it would provide information regarding the restitution amount. *Id.* Instead, Urzua-

Hernandez simply agreed to comply with any court order to pay restitution *if* the district court ordered it.

¶ 18     Moreover, in *Tennyson,* the prosecution "specifically asked for restitution" at sentencing, and the district court gave it ninety days to determine "not whether there would be restitution, but rather '*what restitution is due and owing.*'" *Id.* at ¶ 10.  The supreme court inferred from the terms of the plea agreement and this exchange at the sentencing hearing that the district court had "found [the defendant] liable for restitution but deferred until after sentencing" only the amount.  *Id.*  In contrast, the *only* reference to restitution at the sentencing hearing in this case came from the district court, which granted the prosecutor ninety-one days to investigate and file a notice of restitution, and explained, "What this means is that the Prosecutor's simply going to *potentially* request that you pay any out-of-pocket expense to the victims in this — in these cases." (Emphasis added.)  We do not read this as an order, implicit or otherwise, that Urzua-Hernandez is liable for restitution and deferring only the amount.

¶ 19     In *Johnson,* setting aside that the existence of a restitution order was not at issue in the case, the district court's order

expressly required the defendant to pay restitution. Specifically, the court found that the defendant "would be obligated to pay restitution." *Johnson*, ¶ 8. As discussed, no such assignment of liability occurred at Urzua-Hernandez's sentencing hearing.

¶ 20 Still, the Attorney General argues that the record as a whole establishes that the district court issued an order at sentencing that Urzua-Hernandez was liable for restitution but reserved setting the specific amount of restitution for a later date. *See* § 18-1.3-603(1)(b). In support, the Attorney General points to the plea agreement, the statements made at the providency and sentencing hearings, the presentence investigation report (PSIR), Urzua-Hernandez's failure to contest restitution when it was ordered, and the mittimus. We are not persuaded.

¶ 21 First, although Urzua-Hernandez's plea agreement addressed restitution, we disagree with the Attorney General that it reflects an agreement that Urzua-Hernandez would be liable for restitution, subject only to a later determination of the amount. In the plea agreement, under the heading "AGREEMENT," Urzua-Hernandez agreed that restitution would be "as ordered by the court." But he did not agree that he was liable for restitution. Rather, as written,

10

the language of the plea agreement amounts only to an agreement to pay restitution *if* ordered by the court.

¶ 22     Moreover, at the providency hearing, restitution was mentioned for the first time when the district court reviewed the basic terms of the plea with Urzua-Hernandez, stating, "Do you understand that you would also be responsible to pay *any* restitution as ordered by the Court?"  (Emphasis added.)  The use of the word "any" before "restitution" makes clear that no such request had yet been made or granted.  Further, like in *Snow*, the prosecutor said nothing at the providency hearing about restitution or that the plea agreement included a condition that Urzua-Hernandez was liable for restitution.  Instead, at the conclusion of the hearing the court urged the prosecutor to "try to investigate" it.

¶ 23     Thus, we reject the Attorney General's interpretation of the plea agreement and statements at the providency hearing as reflecting Urzua-Hernandez's agreement to be liable for restitution.  And in any event, the court was not bound by the terms of the plea agreement.  *See People v. Mazzarelli*, 2019 CO 71, ¶¶ 20-21 (a district court is not bound by the terms of a plea agreement simply by accepting the guilty plea).

¶ 24    Second, the Attorney General points to the PSIR and notes that it outlined (in the attached warrantless arrest affidavit) the various injuries the victim sustained, and Urzua-Hernandez did not object to the report's contents. But the PSIR said nothing about the victim being responsible for medical bills, nor did it indicate that the victim was seeking restitution. Further, the victim did not attend the sentencing hearing or otherwise report that he was requesting restitution. While it would be reasonable to infer that the victim here suffered a pecuniary loss, the existence of such a loss does not automatically transform the district court's order at sentencing into a valid subsection (1) order. Indeed, *Snow* was a homicide — another case in which it would have been reasonable for the sentencing court to anticipate that restitution might be requested. *See Snow*, ¶ 6. Nevertheless, as the supreme court made clear in *Snow*, the district court cannot account for such an anticipated request by reserving the entire issue for future resolution. *See id.* at ¶ 39.

¶ 25    Third, looking to the sentencing hearing itself, we are not persuaded by the Attorney General's assertion that the district court's express grant of ninety-one days for the prosecution to file

its notice of restitution constituted an implicit finding that Urzua-Hernandez was liable for restitution and that the prosecution only had to submit a request as to the amount. As noted, even after telling the court that it would investigate restitution, the prosecution did not again utter the word restitution at the sentencing hearing. Nor did it inform the court that there was restitution or ask the court for more time to determine or finalize the restitution amount. Further, the court explained its express grant of ninety-one days by clarifying that "the [p]rosecutor's simply going to *potentially* request [restitution]" and only "[i]f" there was not a timely objection to that request, would the court "order[] as a condition of [Urzua-Hernandez's] sentence . . . that [Urzua-Hernandez] pay restitution as ordered by the Court." (Emphasis added.)

¶ 26 We also reject the Attorney General's reliance on Urzua-Hernandez's failure to contest the restitution amounts at the time they were ordered. The defendant in *Snow* likewise did not respond to or object to the prosecution's request for restitution. *See Snow*, ¶ 8.

¶ 27    Last, having rejected the premise that the district court assigned liability to Urzua-Hernandez at sentencing, we also necessarily reject the Attorney General's reliance on the proposition that a district court's oral pronouncements at sentencing control over the mittimus.

¶ 28    Accordingly, when considering the surrounding circumstances — including the plea agreement, the PSIR, the mittimus, and the statements made by the parties and the district court at the providency and sentencing hearings — we cannot conclude that the court implicitly ordered Urzua-Hernandez to pay restitution (reserving only the determination of the amount for a later date) under section 18-1.3-603(1)(b).  *See Snow*, ¶ 29 ("Under these circumstances, there is no basis for us to infer that the only issue the district court deferred until after the sentencing hearing was the determination of the amount of restitution.").  Therefore, because the district court failed to enter one of the orders required by section 18-1.3-603(1) at sentencing, Urzua-Hernandez's sentence was illegal.  *See Snow*, ¶ 23.

## C.    Remedy for an Illegal Sentence

¶ 29    When the district court fails to enter one of the four enumerated restitution orders in section 18-1.3-603(1) at sentencing and later enters a post-sentencing restitution order, "the sole remedy . . . is vacatur of the untimely restitution order and entry of an order . . . that there is no restitution owed."  *Snow,* ¶ 38.

¶ 30    That is the proper remedy in this case.  In so concluding, we disagree with the Attorney General that this deficiency can be cured by construing the district court's post-sentencing order as a subsection (1)(a) order obligating Urzua-Hernandez to pay restitution and thereby correcting the illegal sentence that was previously imposed.  *See id.* at ¶ 37.  While we agree that the court's post-sentencing order was within the timeframe required by subsection (1)(b) at that time,[1] a subsection (1)(a) order "must enter *at or before the sentencing hearing."  Id.* at ¶ 34.  And because the court did not enter a restitution order at sentencing, its post-sentencing restitution order was "necessarily untimely," *id.*, and

---

[1] The deadline in section 18-1.3-603(1)(b) was recently amended, but those changes do not have any impact on this case.  *See* 2025 Colo. Sess. Laws 1304.

not, as the Attorney General suggests, consistent with the timeframes set forth in the statute.  Thus, the sole available remedy is to vacate the untimely restitution order and enter an order under subsection (1)(d) that no restitution is owed.  *Id.* at ¶ 38.  We therefore vacate the restitution order and remand the case to the district court to enter an order that no restitution is owed.

### III.    Disposition

¶ 31    The restitution order is vacated, and the case is remanded for entry of an order that no restitution is owed.

JUDGE SULLIVAN and JUDGE MEIRINK concur.